FILED

2018 Oct-05  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# United States District Court
## for the
## NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **STEVEN B. BARGER, an individual,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil Action No. EDNY: 1:17-cv-04869-FB-LB** |
| **V.** | : | |
| | : | **Civil Action No. 2:18-mc-01569-KOB** |
| **FIRST DATA CORPORATION, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## RESPONSE TO MOTION TO COMPEL
## &
## MOTIONS TO QUASH & FOR PROTECTIVE ORDERS

I am Grant Barger, and this is my response (Response) to Defendant's Motion to Compel

Third Parties Phillip Morgan, Grant Barger and Barger Consulting Group to Comply with

Deposition Subpoena and Memorandum of Law in Support Thereof (Motion). I will try to use

the defined terms in the Motion below. I am also seeking for the subpoenas discussed in the

Motion to be quashed or that the court make a protective order prohibiting the deposition and

documents being requested from me.

### A. Procedural History Section of Motion

I do not dispute the dates of service of the subpoenas at issue in this case as stated by

Defendants in the Motion under the "Procedural History" section and do not dispute that Exhibits

C & E to the Motion are copies of the subpoenas. One subpoena was served on Grant Barger, an

individual (Grant, G.Barger, me or I), a second was delivered to me and was issued to Barger

Consulting Group, LLC, and a third was issued to Phillip D. Morgan (an individual). I disagree

with the Motion's statements implying that "Barger Consulting Group, LLC" is my company.

These subpoenas all provided:

> *Testimony:* **YOU ARE COMMANDED** to appear at the time,
> date. And place set forth below to testify at a deposition to be taken
> in this civil action. If you an organization, you must designate one
> or more officers, directors, or managing agents, or designate other
> persons who consent to testify on your behalf about the following
> matters, or those set forth in an attachment.

All of the subpoenas listed a date to appear of 09/17/2018. None of the subpoenas contained a

list of matters for testimony or an attachment of matters for testimony. I take this to mean that

none of the subpoenas were issued to an organization. If they were, no matters for deposition

were listed.

All of the subpoenas also included requests for documents. The subpoenas issued to the

individuals included requests for documents that belong to entities, not individuals. The entities

owning and possessing the documents were not subpoenaed.

In the bullet points below, I have listed the statements made in the Procedural History section

of the Motion that I do not dispute, and in brackets below the bullets I list my disagreements with

the Procedural History section:

- Two subpoenas were delivered to me by a process server on September 8, 2018.
- I sent and received the e-mails and letters dated September 11th and 12th attached to the Motion as Exhibit I & J.
- I filed and served a motion to quash the subpoenas and for a protective order on September 13, 2018 and an amendment to the motion to correct the caption, Case No. 2:18-mc-01491-KOB, and those documents are attached as Exhibits K & L to the Motion.[1]

---

[1] I do not understand footnote 4 of the Motion about me representing others. I was simply requesting that Morgan not be required testify or turnover document about me and my business and my documents for the same reasons I argued in my Motion to Quash. I also don't understand the statement that the Motion is "being filed against G. Barger and Morgan" but it also lists a subpoena issued to "Barger Consulting Group, LLC."

2

[The Procedural History section of the Motion says I filed at 4:36 pm on

September 13, 2018. This is not correct. I went to the court to manually file my

motion around 9:00 am. I do not know why the filing says 4:36 pm, because I

have file stamped copies of the motion and amendment stating it was filed in the

morning. The Clerk's office received it as filed in the morning, but must not have

scanned it until 4:36.]

- I sent the e-mail dated September 14, 2018 that was quoted in full in the Motion and attached to the Motion as Exhibit N.

- I received the September 14, 2018 e-mail attached to the Motion as Exhibit O.

  [The Motion does not mention that I was included as a cc: on that September 14th

  e-mail. That e-mail was not addressed to me. The other individuals on the "cc:"

  list included all of the attorneys in the *Barger v. First Data* case in New York.

  This e-mail was only an FYI to those on the cc: list which included me. I

  understood this to mean that Mr. Eidelman was not coming to Birmingham on

  September 17th and that my deposition was canceled. There are no documents

  indicating my deposition was continued or postponed, it was canceled.]

- On September 17, 2018, Chief Judge Bowdre denied the Motion to Quash and Motion for Protective Order.

  [The Procedural History section of the Motion does not mention that the

  reasoning for the denial was that there was no evidence that my Motion had been

  served. However, it had been served and I had timely, manually filed a Certificate

  of Service, but that did not get scanned into the electronic system.]

- On September 18, 2018, I filed a Motion for Reconsideration.[2]

  [The Procedural History section falsely states that I never served this Motion for

  Reconsideration. I did serve the Motion. Because I do not have electronic filing

  access, I had to manually file my motion, then e-mail it and mail it to serve it. By

---

[2] I do not understand footnote 2 in this Motion or what it has to do with this case.

the time I completed this process, the court had decided my motion and closed the

case so there was no way for me to file the certificate of service. I filed a Motion

to Reopen the case so that this Certificate of Service can be filed to fix the

record.]

- On September 20, 2018, the court vacated the denial of the Motion to Quash and Motion for Protective Order. The Order was attached to the Motion as Exhibit R. That Order was signed on September 19th, but is dated on the header of filing as September 20th.

[The Procedural History section of the Motion implies I was misleading by saying

Mr. Eidelman "canceled" my deposition. I was "cc'd" on the September 14, 2018

e-mail to Morgan. Unlike all of the other communications involving me and

Morgan where I received nearly identical letters or e-mails, I did not receive the

same communication from Eidelman that Morgan did on September 14th. All I

could tell from the e-mail to Morgan was that Mr. Eidelman was not coming to

Birmingham on the date of my deposition ordered in my subpoena. I never

received any communication from Mr. Eidelman about "continuing (postponing)"

my deposition and directing me not to appear like Morgan received on September

14th. Mr. Eidelman either canceled my deposition or did not show for that

deposition at the scheduled time or place. The Procedural History section of the

Motion also leaves out that the Order said "Because the deposition at issue was

canceled, the court need not consider whether Mr. Barger's motion to quash and

motion for protective order should be granted" and the court declared that my

motion was MOOT. This meant to me that the subpoenas no longer needed to be

quashed because they were no longer valid, and so I did not need to deliver my

objections to the document production list within the time listed in "Federal Rule

of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)" document on page

3 of the subpoenas. I understood that if Mr. Eidelman wanted me to testify or

collect my documents, he needed to get a new subpoena because the ones I

4

received were moot and could not be quashed. If my understanding of the Order is incorrect, I now should be able to provide Eidelman my objections to the subpoenas broad document requests and seek protection against areas of testimony in deposition because I relied on the Order that the subpoena was moot and there was no need to look at the my motion to quash or a protective order.]

Mr. Eidelman and I e-mailed after he filed this motion to compel about us not having had a meet and confer prior to his filing the Motion. Exhibit "A" In all of the e-mails quoted in the Motion, the court can see I have been open and seeking a discussion because my view is that the requests in the subpoenas are very broad and need to be limited because they request information that has nothing to do with *Barger v. First Data*, and they request my personal financial information and about my business's financials and clients over the excessive time period of 2010 to 2017 (8 years).

## B. Background Section of Motion

The *Barger v. First Data* case involves claims by Steve Barger that First Data Corporation and violated the FMLA and ADA when they fired him in February 2017. Plaintiff Barger is my father. Plaintiff Barger was hired by First Data as a Senior Vice President on June 30, 2014. Before Plaintiff Barger was hired by First Data, he worked for my business as an independent contractor and I paid him as a contractor. The Motion wrongly states the name of my company. In 2014 I told Plaintiff Barger that I strongly disagreed with his decision to go to First Data as an employee. Losing Plaintiff Barger's revenue would and did harm my business. Since his hiring by First Data June 2014, Plaintiff Barger has not worked for my business as an employee or contractor. The subpoenas have requested information about my business for the entire time Plaintiff was a contractor to my business and for the entire time between Plaintiff Barger leaving my business and the end of 2017.

5

The understanding between me and Plaintiff Barger regarding how the revenue he generated for my business prior to June 2014 would be allocated between him and the business has nothing to do with Plaintiff Barger's cancer, surgery, and leave during September to December 2016 that are at issue in the *Barger v. First Data* case.

The Background section of the Motion includes reference to an August 15, 2018 letter motion to Lois Bloom, USMJ for the EDNY, ECF 54, attached as Exhibit A to the Motion. This is the letter that requested the New York judge extend the discovery period in *Barger v. First Data* so that First Data could depose me and Morgan. The only justification for seeking my deposition was because "Joseph Plumeri, at the time a First Data senior executive, relied on [Plaintiff's] representation regarding the amount of his monthly income in establishing the rate for the consulting agreement and ultimately compensation for employment." This statement is false. The remainder of that letter discusses the Plaintiff's tax returns, which also are not relevant to the *Barger v. First Data* case.

The subpoenas I received have nothing to do with Mr. Plumeri. Instead, the requests seek my invoices and billing practices related to my businesses, revenue from First Data in 2014 before Plaintiff Barger was hired away from me, my personal financial information, my personal and business bank statements, and information about my business's clients and contracts. None of these topics have anything to do with Plaintiff Barger's FMLA and ADA claims from being terminated as an employee by First Data in February 2017.

## C. ARGUMENT

These are my arguments against the Motion to Compel me and my request to quash the subpoenas and for a protective order. These arguments apply not only to my subpoena, but also to the subpoena received by Morgan because that subpoena asks Morgan to disclose and be deposed

6

about my personal and business finances and information (that information belongs to me, not Morgan, -- it is not Morgan's to give). I am not a party to *Barger v. First Data*. First Data has no need for my information. I am asking for my information to be protected no matter where it is located. First Data should not be able to collect my information from Morgan if they could not collect it from me.

I have read Rule 26(b). Discovery from me in *Barger v. First Data* must "proportional to the needs of the case considering the importance of the issues at stake". I cannot understand why my personal financial information from 2010 to date has anything to do with Plaintiff Barger's claims that he was illegally terminated by First Data in 2017, or why I should be required to copy 8 years of information that have nothing to do with it. Rule 26 also mentions that the subpoena request also needs to look at the relative access to relevant information. We used First Data's form of consulting agreement when they engaged the consulting business in 2014. First Data already has the agreement and all the billings. I do not have anything to add about First Data's engagement of my business with them. They already have that information. First Data's request for information about my other clients and other contracts are not relevant to *Barger v. First Data*. I should not be required to give First Data information about my business – I am not a party to the case. There also is little benefit to discovery from me because Plaintiff Barger has already answered the questions.

I also read Rule 26(c) which says that First Data and Eidelman were to certify that they had "in good faith conferred or attempted to confer with me. They did not attempt or certify about a good faith conference. It also says this court can issue a protective order to protect a "person" from annoyance, embarrassment, oppression, or undue burden and expense. The discovery from me and Morgan is simply to harass me.

### 1. First Data Lied to the EDNY and Chief Judge Bowdre

As noted above, in the August 15, 2018 letter to Judge Bloom in New York, the only reason given for needing to speak with me about Plaintiff Barger's consulting prior to his being hired by First Data was because of Plaintiff's alleged representations made to Joe Plumeri regarding the amount of his monthly income prior to when he was hired. The New York Judge granted more time for First Data based on that representation. That representation was untrue and misleading. First, I have no information about any representations that Plaintiff Barger may have made to Joe Plumeri. Mr. Plumeri and Plaintiff Barger have been friends for more than 30 years. I do not know what Plaintiff Barger told Mr. Plumeri. I do know that when the two of them have worked together for decades and that Mr. Plumeri as Plaintiff's superior has paid him millions of dollars as total compensation some years in the past. The subpoena I received asks for significantly more than information about Plaintiff's monthly income. There are 16 categories, not one category. These include information well beyond Plaintiff's monthly income, such as: personnel files, corporate tax returns, consulting contracts with all clients (not just First Data) between Barger Group LLC and its clients from 2010 to 2017, Barger Group LLC's financial statements, Barger Group's billing rates (not just to First Data) from 2010 to 2017, information about consulting arrangements without written documents from 2010 to 2017, communications with attorneys, and more. Either the statement made to Judge Bloom was false, or the subpoena I received overly-broad, oppressive, designed to harass, burdensome and served for an improper purpose to seek information about my business that is not relevant to the *Barger v. First Data* case.

First Data and Eidelman also lied in the Motion to Compel. Plaintiff Barger consulted with First Data for longer than 3 ½ months. He began working with Joe Plumeri as a consultant

8

on First Data business in January 2014 and was hired by First Data as an employee at the end of June 2014.

First Data omits to tell the Court that since August 11th I was asking to talk and confer with Mr. Eidelman to determine what information he needed from me. My understanding was that Mr. Eidelman was Mr. Plumeri's attorney because of the disclosures he had made in the *Barger v. First Data* case. I even offered to meet with Mr. Eidelman on August __, 2018. Mr. Eidelman never responded. He did have time to go to the New York court and seek more time, to be able to harass me, but he apparently did not have time to talk with me in Birmingham. My e-mails to Mr. Eidelman are attached as to this Response.

## 2. There is Nothing to Compel

There is no outstanding subpoena for my testimony or my documents. There is nothing to compel. If the subpoenas were still outstanding and effective, my motion to quash could not have been moot.

I described in my motion to quash that as soon as I heard First Data and Mr. Eidelman wanted to speak with me in August, I proactively reached out to Mr. Eidelman by e-mail telling him my availability in August. Mr. Eidelman did not respond at all. Instead, he filed a Motion to Extend time in EDNY and then sent me subpoenas on September 8th without ever talking with me even though I reached out to discuss what he needed. I sent the e-mail to Eidelman on September 11th quoted in the Motion on pages 5 & 6 and attached to the Motion as Exhibit I asking why a subpoena was sent when I had asked to discuss with him what was needed in August.

I was served subpoenas Monday Columbus Day, September 8th. The subpoenas commanded depositions and documents nine days later on Wednesday, September 17th. This timing seemed very short to me. Mr. Eidelman even asked if I could get him the documents in

9

advance by Wednesday, September 12th. If you look at the broad scope of documents requested, it was impossible for me to collect all of that information in 4 days. I filed and served my Motion to Quash and Motion for Protective Order on September 13th. I sent the e-mail that is Exhibit M to the Motion of September 14th that is quoted on pages 7 & 8 of the Motion. I apologized for miss captioning the title and I asked:

> I am very confused about why I received these demands from New York in such a hostile manner I prefer a calm diplomatic approach to life. I will treat you with respect and ask you do the same for me.
>
> Please help me understand exactly what you're looking for here. I's also like to know why Joe was mentioned in your court filing bur not part of the papers I got on Saturday.

After issues inside the clerk's office getting documents I gave them into the electronic filing system, Chief Judge Bowdre by an order she signed on September 19, 2018 declared subpoenas moot. Because my motion was filed, on Friday September 14th, my deposition for Tuesday September 17th was canceled by Mr. Eidelman. Because Chief Judge Bowre's order said the subpoena and my motion was moot and the noticed date for my deposition had passed, there is no outstanding subpoena to compel.

I was also prejudiced because Mr. Eidelman canceled the deposition on September 14th and the subpoena was declared moot on September 19th, I relied on those representations and did not provide my objections to the document requests that were included in the subpoena that was canceled by Eidelman and declared moot by the Court.

I do not understand how a moot subpoena can be compelled and why I should be deprived of my ability to object to the scope of discovery included in the subpoenas.

Mr. Eidelman either needs to serve a new subpoena and allow me the time to object to him, or Mr. Eidelman needs to reopen the case decided by Judge Bowdre and ask her to reconsider her decision. Opening a new case to compel on a subpoena already declared moot by

Judge Bowdre makes no sense to me. The issue of the subpoenas served on September 8th was already decided. How can they now be compelled?

### 3. No Meet and Confer – Never Occurred and No Certification

Before filing my Motion to Quash and Protective Order, I reviewed the Federal Rules of Civil Procedure. My understanding is that a good faith meet and confer is required prior to filing a Motion to Compel. There never has been a meet and confer. First Data never told me they were going to file a Motion to Compel. The first I had heard that a motion to compel would be filed is when I received Eidelman's e-mail on September 24th. I have repeatedly have offered to make myself available for a discussion with Mr. Eidelman. Those emails are attached.

The e-mails attached to the motion and those quoted in the Motion to compel all reflect that I have been trying to have a discussion with Mr. Eidelman to discuss what information is needed from me. Mr. Eidelman continually refuses to talk with me and has merely sent me subpoenas and motions to compel without ever talking to me.

First Data filed the Motion to Compel without ever meeting or conferring. First Data filed the Motion to Compel without a Certification that a meet and confer occurred. There is nothing in the Motion discussing any conversations. I would have told Mr. Eidelman that his requests were too broad if he had asked. Instead, he only made demands for me to produce in four days (when he ignored my request to discuss the issues with me for a month). He lied to the Court in New York about the reasons he needed to depose me. And then he filed a motion to compel without ever talking with me or writing me about the substance of my motion to quash and my concerns about the scope of his inquiry.

### 4. Privilege

11

The subpoena also requests information about communications I have had with the employees of the Law Office of Shawn Shearer regarding *Barger v. First Data Corporation.* Plaintiff Barger was hired by First Data in 2014 and he was terminated in February 2017, and that case was filed in August 2017. Any discussions I had with anyone about that case had to been after 2017. That information clearly is not relevant to Plaintiff Barger's consulting in 2014 and earlier, which is what First Data says it is seeking from me. The Law Office of Shawn Shearer has provided me corporate and legal advice about my business and those conversations are privileged.

### 5. Duplication/Access

First Data already has all of the invoice from my business to them for Plaintiff Barger's consulting services from January 2014 through June 2014. First Data already has the information about the amount they paid the consulting business during 2014. There is no need for me to be burdened to produce what they already have. There is no reason to look at the businesses bank statements to confirm that First Data paid. They know they paid.

There is no reason to look at the businesses records of billings to other clients over the period between 2010 and 2017. There is no reason to know the rates at which other clients were billed.

First Data already has the answers to their questions about Plaintiff Barger's personal billings from 2011 through 2013. Plaintiff Barger disclosed this information to First Data and attached it to a filing in the *Barger v. First Data* case. Exhibit "__" is Plaintiff Barger's interrogatory answer containing this information. I cannot possibly know all of Plaintiff Barger's billings. He may have done work for others that was not coming into the consulting company. First Data has the answers it needs to its questions needed from me listed in the letter to Judge Bloom attached

12

to the Motion as Exhibit A. Plaintiff Barger's interrogatory answer is all they need because he

clearly lays out his records.

In that interrogatory response, Plaintiff Barger's signed and said:

> From early 2011 through June 2014, I worked as a consultant and all my client
> billings were paid to The Barger Group, LLC. Based on the records in my
> possession, my aggregate billings for my consulting work during the 30-month
> period between January 1, 2011 and June 30, 2013 was $654,920. I do not
> have records for the last six months of 2013, but my recollection is that I
> continued to bill at approximately the same rate during the latter half of 2013.
> During these periods, I worked every day on my consulting work. I billed
> $3,000 per day plus expenses. However, I only billed for those days on which
> I worked directly with clients. My work in preparation for client meetings and
> preparation of materials for client meetings and presentations was not billed. In
> 2014, prior to my employment by First Data, I worked as a consultant for First
> Data in addition to continuing my consulting for other clients. I invoiced First
> Data, and First Data processed and paid, approximately $188,000 in consulting
> fees and expenses to The Barger Group over the first 6-months of 2014. As I
> testified during my deposition in this case, during my employment with The
> Barger Group, I intentionally did not draw much in salary, choosing to leave
> the revenue from my consulting billings in the company.

I don't know what more information I can provide. Plaintiff Barger provided the information

about his billings from June 2011 to June 30, 2013 while he was a contractor. Mr. Barger

disclosed the amount he was paid by First Data.

I am not a party. There is no evidence that Plaintiff Barger's statement is inaccurate. First

Data has all the information regarding its consulting arrangement during January 2014 through

June 2014. A deposition and document collection from me is duplicative from what First Data

already possess. There can be no other reason for pursuing me to this extent other than to harass

me or find information about my business that they do not already have.

## 6. Improper Purpose

The filings by First Data imply that they believe the consulting business improperly charged

First Data for work done between January 2014 and June 2014. These allegations have nothing

to do with the time Plaintiff was employed by First Data from July 2014 to February 2017. The

13

subpoenas I received and the numerous documents I have been requested to produce tell me that First Data is not looking for information for the *Barger v. First Data* case. First Data is trying to use the subpoenas to develop a case against me. They have already lied to the Court in New York and here in Alabama with the story that Joe Plumeri was tricked. That is not true and they know it. If they think the consulting business breached a contract in 2014, they should bring their breach of contract claim against the consulting business. But that has nothing to do with the FMLA and ADA in *Barger v. First Data*. And this subpoena to me as a third-party witness should not be used by First Data to fish for evidence to develop another case.

### 7. Trade Secrets

The subpoenas ask me for information about clients and billing rate for the period of 2010 to 2017. From July 2014 to February 2017, Plaintiff Barger was an employee of First Data. My clients and billings during that period are irrelevant to Plaintiff Barger's monthly income prior to being hired by First Data and have nothing to do with the *Barger v. First Data* case.

I should not be required to tell Eidelman and First Data who my clients are. They should not be entitled to know the terms of my contracts. They should not be entitled to know how I bill clients. There could be significant damages to my business if clients know I am revealing their information and Mr. Eidelman could go chasing them down with subpoenas that are overly broad and burdensome like the one I received. No information about the businesses consulting clients should be subject to any of the three subpoenas.

### 8. Wrong Person

All three subpoenas seek information that belong to entities. The subpoenas say that if the deponent is an organization, then the matters for testimony must be specified and the entity can designate a representative to testify. The consulting business is operated as a limited liability

14

company. As an individual, I do not have the authority to turn over documents belonging to a company. Same for Mr. Morgan. Also, if the consulting business LLC is to be deposed, it has not had the opportunity to designate its representative to testify on its behalf. There is also the confusing questions about all the LLC names that are not consistent in any of the subpoenas.

### 9. Overbroad and Irrelevant

I did not have an opportunity to object to the subpoenas because they were determined to be moot. If I had the opportunity to do so, I would say the following about the scope of information being requested from me, an individual. I am not a party to the *Barger v. First Data* case and these requests about me and my business for a 7-year plus period of time makes no sense. It seems to me that First Data and Mr. Eidelman are merely trying to harass me to get leverage, not because they want to actually see my documents or talk to me.

His requests are too broad and not relevant to the case. For example, in my subpoena, I am asked to give Mr. Eidelman copies of:

- Documents concerning Barger Group, LLC's bank accounts and tax returns between 2010-2017.

  [The bank accounts and tax returns of the LLC over an eight year period is overly burdensome, not relevant to Plaintiff Barger's case regarding his employment by First Data, and not proportionate to the needs of that case. This request also is designed to harass, oppress and embarrass. It is also much broader that what was told to the New York judge as to determining Plaintiff Barger's monthly income immediately prior to his hiring by First Data on June 30, 2014.]

- All documents concerning consulting contracts, oral agreements, billing rates, retainer fees, processes for earning and billing consulting fees, for business from 2010 through 2017.

15

[My contracts, agreements and billing practices with others have nothing to do with the case. My business had a contract with First Data. First Data knows about that contract. My contracts with other clients for this period of time, which includes the four years before Plaintiff Barger was hired by First Data, the three years Plaintiff Barger Worked for First Data, and the 10 months after Plaintiff Barger was terminated by First Data, has absolutely nothing to do with Plaintiff Barger's employment by First Data from June 2014 through February 2017, and his claim that First Data violated the FMLA and ADA when they terminated him. First Data has all of the information they need. They have a copy of their consulting contract, copies of all the invoices for the consulting by Plaintiff Barger for First Data, and all of the records of their payments of those invoices. That means they directly know that the amount of Plaintiff Barger's billings and collections during 2014 as a consultant was at least the amount billed and paid by First Data for consulting services in 2014. It is overly broad to seek all of the clients and billings by Plaintiff Barger consulting from 2010 to 2014.]

- Documents providing support for any and all travel, meals, entertainment and other expenses of Plaintiff Barger while he was consulting for the period of 2010 to 2017

[First Data told the New York court and this court that the purposes of the discovery was about Plaintiff Barger's monthly income prior to his being employed by First Data. The expenses of my consulting business have nothing to do with Plaintiff Barger's income. Again, the request is for an 8 year period, more than half of which does not include times when Plaintiff Barger was consulting for my business.]

## D. REQUESTS

By my reading of Rule 26, all three subpoenas seek information beyond that allowed. First Data told the New York judge they wanted to know about Mr. Plumeri. But, none of the

16

questions of me are about Mr. Plumeri. Plaintiff Barger already told First Data in his interrogatory quoted above the amount of his billings as a consultant. Getting the same information from me would be duplicative. The documents and information about my business, its finances, its clients, its billing practice, and its taxes, whether held by my business or Mr. Morgan, are not relevant, are trade secrets, are not proportional to the needs of the case, are harassing, burdensome, and meant to embarrass. I ask the court to quash all three subpoenas as First Data already has the information it needs about Plaintiff Barger's billings from him in his interrogatory answer and from the invoices and payment records already in their possession. For the consulting work performed for First Data during the period of January 2014 to June 2014. Information after June 2014 has no relevance at all. No discovery should be conducted on me, my business or Mr. Morgan regarding the consulting business. It is all outside of the scope of *Barger v. First Data*.

I do have relevant information about Plaintiff Barger's work for First Data as an employee during the period of September 2016 through November 2016 that is relevant to the *Barger v. First Data* case. If Defendants would like to depose me about his work on First Data business during that time period, I can testify on that subject.

Dated: October 5, 2018

Grant Barger, Pro Se

6200 foxwood Trail
Burmingham, Al 35242
barger.grant@gmail.com

17

## **CERTIFICATE OF SERVICE**

Today I e-mailed and placed this Motion document into the USPS addressed to the below listed counsel for First Data Corporation.

Arnold W. Umbach III
Starnes Davis Florie LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama  35209
tumbach@starneslaw.com

Gary Eidelman
Saul Ewing Arnstein & Lehr
500 E. Pratt Street, Suite 900
Baltimore Maryland 21202-3133


Date: October 5, 2018

Name: _GRANT BARBER_

Address: _6200 FOXWOOD TRL Birmingham, Al. 35242_

Phone: _(205) 266.8129_

E:mail: _barger.grant@gmail.com_

# EXHIBIT A

**Subject:** Barger v. First Data
**From:** Grant Barger <barger.grant@gmail.com>
**Date:** 8/14/2018 8:55 PM
**To:** gary.eidelman@saul.com
**CC:** shawn@shearerlaw.pro

Mr. Eidelman,

Steve Barger's attorney has notified me that you may wish to depose me in the case Barger v. First Data. I understand that the window for depositions for this case ends on August 31st. While this seems like very short notice I am attempting to rearrange my schedule to free up time to speak to you beginning at 11 am on August 17th in Birmingham.

I have a lawyer here in Birmingham. If this happens I would expect to be able to to meet you at his office for the event. I am in the process of confirming his availability. Given the short time frame I cannot promise anything. I can tell, you I am only going to be available to you in Birmingham.

In the mean time, please contact me using this email address. If August 17th works for you, I will then do my best to firm up the date and location.

Grant Barger+

**Subject:** Joe
**From:** Grant Barger <barger.grant@gmail.com>
**Date:** 9/11/2018 9:10 PM
**To:** gary.eidelman@saul.com
**CC:** shawn@shearerlaw.pro

Mr. Eidelman,

I contacted you by email on August 14th after I found out that you wanted to speak to me about a former contractor of mine, Steve Barger. I understand that you are Joe Plumeri's lawyer.
I think you must have misunderstood my email because I received court papers that say you want to talk to me on September 17th. I never said I was available on September 17th. I said I was available on August 17th. You never confirmed any date or contacted me using the email I provided you. Instead, at 7:30 at night on Saturday September 8th (23 days later), you sent me these court papers full of demands that I have no idea why you want or what they have to do with Steve Barger and Joe Plumeri.

I've known Joe for over thirty years. If you wanted to ask me questions about Joe, why not just use my email and ask? Why the cloak and dagger drama of demanding a bunch of papers that I never agreed to give? I don't get it.

I am sorry if you thought I meant September 17th, I thought I made myself pretty clear in the email that it was August 17th. Why let three weeks go by and not bother to email me and ask if I'm available? That makes no sense. I gave you my email for a reason.

Obviously, I am not going to give you any papers, again, why the high drama?
You have my email. You chose instead to send me court papers and give me three days to get you my private papers? Why?

I need a few days to get my head around this. You clearly misunderstood what I told you. I said August 17th. I have no idea why you decided to burden me at the last minute, why not just communicate like a normal business person. I gave you my email so you would use it.

Even though you didn't give me the respect of a fast reply or ever tell me you were coming, I am giving you the courtesy of a fast reply. September 17th is less than a week away. You have had my email for nearly four weeks. I am not available to you on that day and will let you know what I decide about my legal options by the end of this week.

Grant Barger

**Subject:** RE: Joe
**From:** "Eidelman, Gary B." <Gary.Eidelman@saul.com>
**Date:** 9/11/2018 9:44 PM
**To:** 'Grant Barger' <barger.grant@gmail.com>
**CC:** "shawn@shearerlaw.pro" <shawn@shearerlaw.pro>, "Kennedy, Lindsey C."
<Lindsey.Kennedy@saul.com>, "Cooper, Gillian A." <Gillian.Cooper@saul.com>


Mr. Barger:

This will acknowledge receipt of your email.

My Firm represents Defendants First Data Corporation, Frank Bisignano, Dan Charron, Tony Marino, Karen Whalen and Rhonda Johnson who your father sued in the United States District Court for the Eastern District of New York as indicated on the deposition notice and subpoena. I don't know who has given you the idea that I am Joe Plumeri's lawyer. Mr. Plumeri is not a party in this case.

Your father testified at his deposition about work he apparently did on behalf of Barger Consulting prior to joining First Data. Judge Bloom, the Magistrate Judge assigned to this case, has extended the discovery period in your father's case to allow us to take additional depositions as a result of his testimony, including your deposition and that of your company Barger Consulting LLC. You and your company have been served with a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure compelling you to attend a deposition on September 17, 2018 in Birmingham. I understand that you and Barger Consulting were served on September 8, 2018. We scheduled the depositions for the same time to minimize the inconvenience. I do not expect the depositions to take that long. If September 17 is not convenient, I am willing to discuss alternative dates but that needs to happen ASAP given that discovery closes on September 28, 2018.

Please contact me tomorrow to discuss. If you have legal counsel and would like me to speak with them instead, please advise. Thank you for your time and cooperation.



**Gary B. Eidelman**
SAUL EWING ARNSTEIN & LEHR LLP
500 E. Pratt Street
Suite 900 | Baltimore, MD 21202-3133
Tel: 410.332.8975 | Fax: 410.332.8976 | Mobile: 410.303.8832
Gary.Eidelman@saul.com | www.saul.com



*Follow our blog, WISE: Workplace Initiatives and Strotegies for Employers, here*


**From:** Grant Barger [mailto:barger.grant@gmail.com]
**Sent:** Tuesday, September 11, 2018 10:10 PM
**To:** Eidelman, Gary B.
**Cc:** shawn@shearerlaw.pro
**Subject:** Joe

**\*\*EXTERNAL EMAIL\*\*** - This message originates from outside our Firm. Please consider carefully before responding or clicking links/attachments.

Mr. Eidelman,

I contacted you by email on August 14th after I found out that you wanted to speak to me about a former contractor of mine, Steve Barger. I understand that you are Joe Plumeri's lawyer.

I think you must have misunderstood my email because I received court papers that say you want to talk to me on September 17th. I never said I was available on September 17th. I said I was available on August 17th. You never confirmed any date or contacted me using the email I provided you. Instead, at 7:30 at night on Saturday September 8th (23 days later), you sent me these court papers full of demands that I have no idea why you want or what they have to do with Steve Barger and Joe Plumeri.

I've known Joe for over thirty years. If you wanted to ask me questions about Joe, why not just use my email and ask? Why the cloak and dagger drama of demanding a bunch of papers that I never agreed to give? I don't get it.

I am sorry if you thought I meant September 17th, I thought I made myself pretty clear in the email that it was August 17th. Why let three weeks go by and not bother to email me and ask if I'm available? That makes no sense. I gave you my email for a reason.

Obviously, I am not going to give you any papers, again, why the high drama?
You have my email. You chose instead to send me court papers and give me three days to get you my private papers? Why?

I need a few days to get my head around this. You clearly misunderstood what I told you. I said August 17th. I have no idea why you decided to burden me at the last minute, why not just communicate like a normal business person. I gave you my email so you would use it.

Even though you didn't give me the respect of a fast reply or ever tell me you were coming, I am giving you the courtesy of a fast reply. September 17th is less than a week away. You have had my email for nearly four weeks. I am not available to you on that day and will let you know what I decide about my legal options by the end of this week.

Grant Barger

"Saul Ewing Arnstein & Lehr LLP (saul.com)" has made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~~~+

This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~~~+

**Subject:** Alabama Protective Order
**From:** Grant Barger <barger.grant@gmail.com>
**Date:** 9/14/2018 5:33 PM
**To:** "Gary B. Eidelman" <gary.eidelman@saul.com>, Shawn Shearer <shawn@shearerlaw.pro>

As I promised I am contacting you by weeks end to inform you of my decisions regarding my legal options. As you know, I filed a request for a protective order and a motion to quash here in Alabama in front of Judge Bowdre. I do not have the extra resources for a lawyer at present. So I am going to continue to communicate with you directly.

Please use this email to contact me. Please do not send any more strangers to my home. If you want something from me, a direct approach is best. While we are adversaries in this matter, it is not my style to intentionally humiliate or embarrass another person. For any reason. When I filed my motion on Thursday I did not know exactly what to write in the upper left-hand box because there was no case number in Alabama at the time. I filled the box out to the best of my ability. Because you sent me the subpoena, I assumed I should direct the motion to you. As soon as I left I realized that what I wrote made it look like I was suing you and your firm. I immediately did some extra work and then gave the court a replacement for that page later on Thursday. The clerk accepted my replacement page.

I just wanted to apologize for giving the public impression that you are being sued. I know I wouldn't like it if someone did that to me. It was never my intention to embarrass you or give the wrong impression. I fixed it as soon as I realized that it looked wrong. And the clerk accepted my correction. I am very confused about why I received these demands from New York in such a hostile manner. I prefer a calm diplomatic approach to life. I will treat you with respect and ask you do the same for me.

Please help me understand exactly what you're looking for here. I'd also like to know why Joe was mentioned in your court filing but not part of the papers I got on Saturday.

Thank You

Grant Barger

## GRANT BARGER

6200 Foxwood Trail
Birmingham, Alabama 35242

September 28, 2018

Arnold Umbach
Starnes Davies Flores LLP
100 Brookwood Place, 7th Floor
Birmingham, Alabama 35209

### Re:   Barger v. First Data Rule 11

Dear Mr. Umbach:

My name is Grant Barger and I am writing today to advise you of my intention, as pro se counsel for myself, to file a "Rule 11 Motion" in the Northern District in Alabama as a result of the Motion to Compel in *Barger v. First Data* (2:18-mc-01569) that you filed as counsel for First Data and on behalf of Gary Eidelman and Saul Ewing.

### BACKGROUND

On August 11, 2018, I was informed by Mr. Steve Barger's counsel that Mr. Gary Eidelman wished to depose me to find out if I had any information related matters that Eidelman claimed to have newly discovered during an August 10, 2018 deposition that Eidelman took in the *Barger v. First Data* case (1:17-cv-04869) filed in EDNY. On that same day, I contacted Mr. Eidelman via e-mail and informed him that I was aware that Mr. Eidelman was facing a "discovery" deadline of August 31, 2018. I offered to try to find a location and make myself available to Mr. Eidelman on August 17, 2018 so that Eidelman could meet his deadline.

August 31st came and went. Eidelman never contacted me to attempt to arrange a time to talk in Birmingham. No one else from Saul Ewing, or any other law firm, ever responded to my August 11th attempt to figure out a timely resolution to Eidelman's request. I told Eidelman I was pro se and to use the email I provided Eidelman as a means to contact me.

I told Eidelman to use the e-mail I provided him in order to contact me if he needed to collaborate on times, dates or issues. Instead of using my e-mail to attempt to have a civil discussion, Eidelman chose to send a large man to my home at night, who loudly pounded on my door while my family was home. It sounded like someone was kicking the door in. This type of aggressive behavior (I do, in fact, have a doorbell) was completely unnecessary. Eidelman then proceeded to demand documents from me in 72 hours, even though he had secured a full month for himself from the New York judge to complete this inquiry based on a lie. I guess simply sending a civilized email lacked the element of bullying that Eidelman felt he needed in order to get First Data's message across to me. At no time did I refuse to communicate with Eidelman. I assume that Eidelman chose this hostile posture in part because the "subpoenas" he sent to my

home have nothing to do with the reasons outlined to the judge in the ENDY on August 17, 2018 when Eidelman told the judges that he "needed more time" to depose me.

Eidelman did not need more time. Eidelman WANTED more time. For what, I have no idea. What I do know is that Eidelman told the NY judge that he needs to depose me as a result of circumstances surrounding Joe Plumeri. You even indicate in the Motion to Compel that you signed that I needed to be compelled surrounding the consulting arrangement entered between Plaintiff Barger and First Data (Joe Plumeri). I have known Joe Plumeri for over 30 years. So, I found it surprising when Eidelman send demands to my home about various subjects that are irrelevant, abusive and harassing – and NOT ONE of them is related to Joe.

I have e-mailed Eidelman several times since August and tried to get him to just be honest about what information he needs about Joe. I have asked Eidelman to "meet and confer" about both dates and the "scope" of the topics he wants to discuss. He refuses to do so.

## COURT INVOLVEMENT

Since Eidelman refused to meet and confer, I had no choice but to file a motion to quash and motion for a protective order in front of Judge Bowdre on September 13, 2018. On September 19, 2018, Judge Bowdre ruled that my motions were moot. Her Order was entered on September 20, 2018. Eidelman failed to meet and confer, and Eidelman voluntarily decided not to travel to Birmingham (i.e. canceled) my September 17, 2018 deposition.

On September 14, at 5:33 p.m., I attempted once again to start a dialogue with Eidelman to "meet and confer". Eidelman again completely ignored me. You quote this e-mail, and many other e-mails reflecting my attempts to begin a discussion in the "Motion to Compel" that you signed. The reason you do not quote any e-mails from Eidelman back to me, that show Eidelman attempting to discuss a "meet and confer" is because he never sent me any. He never called me. You never emailed me. You never called me. All you did, was misrepresent the truth to a second judge in Alabama in order to attempt to get a motion that is unavailable to you because it has been rendered "moot."

Your Motion to Compel, presented to a new judge, completely misrepresents the facts and events.

I may not be a lawyer, but even I know that if you and Eidelman were dissatisfied with the result of my and case and Judge Bowdre's ruling, your remedy was a "motion to reopen and reconsider." This motion to compel that you presented to the Alabama court is based on lies.

- Eidelman knew there was an existing case when he was served notice that my motion to quash/motion for protective order was filed.
- Eidelman failed to meet and confer – this is why I filed the motion to quash and for a protective order.
- No certificate stating that a "meet and confer" occurred was presented to the court when you filed your motion to compel. You knew by that point that there was an existing case involving my motion to quash/motion for protective order in front of Chief Judge

Bowdre. You know that you never attempted a meet and confer with me. Eidelman hasn't done so, either. You also received copies of the emails between Eidelman and myself of September 25th to 27th where Eidelman admits he hasn't met his "meet and confer" obligation with me, and then when I tell him that I will continue to meet my obligation, as long as you and Eidelman correct your lies to the Alabama judge, he refuses. That email stream alone should be enough for you as an officer of the court to pull your filing in this case. You know Eidelman is lying to the state of Alabama, and by signing his representations, you are also knowingly lying. (Please see attached emails)

- You and Eidelman omitted the truth when you failed to tell the Court that I have been trying to meet and confer since August 11, 2018.
- Your Motion to Compel completely misrepresents that the letter Eidelman wrote to Phil on September 14 (and copied me and various others on), was a communication to ME. It was not. It was a letter to Phil Morgan, and Phil Morgan alone. I was merely copied on the communication along with several other people. You knew this when you filed your motion to compel. Eidelman never sent me ANY letter continuing or postponing my deposition. Eidelman never called me for any reason. Eidelman simply copied me on a different email to another recipient to attempt to let me know he was not coming to Birmingham for depositions, and assumed I would not show up because he knew he was not going to show up.
- There are no legitimate, valid subpoenas either for my deposition or for documents, to empower the judge in front of which you attempted to file your motion to compel, to take action. The subpoenas Eidelman sent to my house are just as moot as my motions. If I cannot quash or be protected from testifying and/or providing documents because my motions and the subpoenas on which they are based are moot, you and Eidelman cannot compel any action using those subpoenas as a basis, for that exact same reason – they are moot. At present, these subpoenas are unavailable to you as the basis for any legal filing. You know this.
- Unless you and Eidelman address Judge Bowdre's ruling first, you have no legal basis on which to compel anything. You know this, too. You are attempting an end run around Judge Bowdre and her rulings. You are well aware that this is what you are doing.

The Motion to Compel misrepresents the facts and the law. By signing the Motion to Compel, Rule 11 provides that you certified to the court that to the best of your "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the Motion to Compel was not (1) "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) the "legal contentions are warranted by existing law"; and (3) the factual contentions have evidentiary support."

None of these things are present in the Motion to Compel you signed. You clearly failed to perform an inquiry reasonable under the circumstances, took Eidelman's word for everything presented in your motion and filed without any investigation. The subpoenas and the Motion to Compel have no purpose other than to harass me. If Eidelman wants to know about Joe, he should have asked questions about Joe. Instead, he is asking for client information for periods after Plaintiff Barger no longer contracted with me and copies of my businesses bank accounts and client contracts unrelated to the case or First Data. The legal contention that the subpoenas can be compelled after they were ruled moot is unsupportable. Judge Bowdre, and ONLY Judge

Bowdre would need to change that decision. Neither Judge Kallon, nor any other judge, can do so. And, most importantly, the factual contentions that any semblance of "meet and confer" occurred is completely inconsistent with reality. I tried to "meet and confer". In the attachment to this letter, I have listed other factual misstatements within the Motion to Compel that would not have been made if you had made any reasonable inquiry at all. Eidelman ignored me and tried to intimidate me. You certainly never attempted a meet and confer. You represented factual inaccuracies to the court in an effort to usurp Judge Bowdre's jurisdiction over this matter. You did so based on demonstrable lies.

I am noticing you that commencing today, you have 21 days to remedy

Grant Barger

4

## ATTACHMENT
## FACTUAL MISTATEMENTS IN MOTION TO COMPEL

On Page 2 of the Motion to Compel, you make the following two false and misleading factual statements:

- Barger worked for 3 ½ months as a consultant
- In Barger's complaint and in answers to interrogatories, he alleged leaving behind a "lucrative consulting" business to begin consulting for First Data as an independent contractor in March of 2014 for a monthly consulting fee of $30,000, before accepting full time employment with First Data several months later at a base salary of $480,000, plus incentive compensation of up to $250,000.

Plaintiff Barger began working on First Data business before March 2014. He worked with Joe Plumeri and First Data for nearly six months as a consultant. Your factual misstatement could have easily been avoided if you had simply asked Mr. Plumeri, the Vice Chairman of the Board of First Data, when Plaintiff Barger began working with him on First Data business.

I reviewed the Complaint in *Barger v. First Data*. In the Complaint in paragraph 36, Plaintiff Barger says that he accepted employment with First Data and left his lucrative business. It does not say he began consulting for First Data. Part of his consulting business before he Plaintiff Barger was employed was his work for First Data and he also had other clients.

On page 8-9 of the Motion to Compel, you make the following false and misleading factual statement:

- On Tuesday, September 18, 2018, G. Barger filed a Motion for Reconsideration which he never served on the Defendants.

I did serve the Motion for Reconsideration by mailing to First Data's counsel, Mr. Eidelman. A copy of the Certificate of Services was attached to my Motion to Reopen 2:18-mc-01489. Mr. Eidelman had already received that mailing by September 24, 2018 when you signed the Motion to Compel. You merely needed to ask your co-counsel if the statement you were signing was correct and accurate.

On page 9 of the Motion to Compel, you make the following false and misleading factual statements:

- In that Motion, G. Barger misled the Court by advising that Defendants had "cancelled" the depositions after the filing of the Motion to Quash and Motion for Protective Order. While he attached to his Motion for Reconsideration a number of emails, he neglected to attach the September 14, 2018 email referenced above in which Defendants' counsel advised that pending a determination on the Motion to Quash and Motion for Protective Order, the depositions were being continued (postponed)

5

This topic was discussed in my letter. I was merely cc'd on an e-mail to Phil Morgan, as were all of the lawyers involved in the *Barger v. First Data* case. It was merely informational for me to know that Eidelman was not going to be in Birmingham on September 17, 2018 when my deposition was scheduled. The content of the September 14 e-mail was not directed to me. Eidelman never sent me a similar e-mail regarding my deposition. I did not mislead the Court.

Arnold Umbach
September 28, 2018

## E-MAILS

Attached are the E-mails in which Eidelman, after the Motion to Compel was filed, admits that we had not met and conferred

7

**Subject:** Re: Obligation to Meet and Confer - IN Barger v. First Data
**From:** Grant Barger <barger.grant@gmail.com>
**Date:** 9/27/2018 4:14 PM
**To:** "Gary B. Eidelman" <Gary.Eidelman@saul.com>
**CC:** Shawn Shearer <shawn@shearerlaw.pro>, tumbach@starneslaw.com, David Zeitlin <david@zeitlinlawfirm.com>, Gillian.Cooper@saul.com

Mr. Eidelman,

I know that I am not a lawyer. I have read that you are considered by your firm, Saul Ewing, to be the "co-chair" of the firm's Employment Division. To the public viewer, that title appears to have some kind of weight behind it. Given my understanding of how other organizations operate, I will assume that your elevated status within your firm means that you have authority in your field and that other, younger lawyers look to you as an example and mentor in many respects.

I have taken time from my own job to educate myself as much as I can about this process because I do not have extra resources to hire a lawyer for this matter at present. One thing that is quite easy for me to understand is that:

1) I have every right to file and try to protect myself from your subpoena(s) since you never responded to my offer to try to find a time for Phil and myself to possibly meet with you at the office of a lawyer I have in Birmingham who assists me on other matters. I have attempted, from August 11th forward, to "meet and confer" with you and avoid unnecessary use of the Court's valuable time. You had a deadline of August 31st in your New York case, and I made every

attempt to help you meet that deadline.

2) You filed a document with the Court in New York saying that you needed "more time" to get testimony from Phil and me. You also told that Court that the reason you needed more time was a direct result of matters involving Joe Plumeri and me. I told you that I have known Joe Plumeri since 1983. I asked you several times to tell me what it is that you want to know from me about Joe – you have never answered me.

3) Even though you got time extended in New York by telling them that you need information from me about Joe, nothing in the subpoena(s) you sent to my house mentions Joe. I have continuously asked you to just be direct. Instead, you sent me a bunch of demands to get information about my current clients. Did you tell the Judge in New York that you wanted my client list for an FMLA/ADA case involving a former contractor I used to work with? Because I don't see that you asked the court for that ability on PACER. Regardless, I have tried to get you to communicate with me, so we can get into a realistic "scope" for this event. All you do is demand things, and you never try to find any common ground. I know I am not a lawyer, but I am a human. And I deserve the same respect I am giving you.

4) Everything I can find to read about this process makes it clear that both parties must "meet and confer" and certify to the appropriate Judge that we did so. Unless we can do that, no protective order can be requested, and no motion to compel can be sought. I have provided Chief Judge Bowdre with the e-mails I sent you upholding

my end of the meet and confer by trying to find some middle ground with you. On the other hand, you went to a different Judge, on September 24th, with no proof that you tried to meet and confer (because you never have) and misled that Judge into thinking you had followed a process you never followed. Then, when you admitted to me on September 26th that you had failed to uphold your end of the required "meet and confer", I thought you were going to stop lying to the Alabama Courts, pull your "motion", and try to work with me. Instead, you did the exact opposite, tried to intimidate me and name drop the new Judge and imply that you and Mr. Umbach have some sort of an "in" with him. You are really just trying to make the Court do your job for you. My understanding is that "meet and confer" is designed to keep clutter away from the Courts. Not so that you can hammer a pro se with your east coast connections.

This is simple, Mr. Eidelman. Please be direct. I am asking you to do what I am doing and be honest with the Court and do the right thing. Remove your motion from the Alabama Court until we meet and confer, and then if we cannot find common ground, maybe then, you can tell the Judge the truth and certify the required paper saying we both met our obligation. You can't leave a motion in front of a Judge that relies on something that is not true. We have never met and conferred because you will not meet and confer. I believe we can find common ground without wasting the Court's time. You aren't trying.

What you are doing is wrong. I am trying to give you a chance to do what you were supposed to do. Please contact me and let me know that you have removed your motion and then we can move this process forward the right way.

Grant Barger

On Tue, Sep 25, 2018 at 7:06 PM Eidelman, Gary B. <Gary.Eidelman@saul.com> wrote:

Mr. Barger:


We have no intention of withdrawing our Motion to Compel as to you and Mr. Morgan. We will let Judge Kallon decide our Motion.

cid:image002.png

**Gary B. Eidelman**
**SAUL EWING ARNSTEIN & LEHR LLP**
500 E. Pratt Street
Suite 900 | Baltimore, MD 21202-3133
Tel: 410.332.8975 | Fax: 410.332.8976 | Mobile: 410.303.8832

Gary.Eidelman@saul.com | www.saul.com

SEAL_WISEBlog_sig

*Follow our blog, WISE: Workplace Initiatives and Strategies for Employers, here*

**From:** Grant Barger [mailto:barger.grant@gmail.com]
**Sent:** Tuesday, September 25, 2018 2:44 PM
**To:** Eidelman, Gary B.
**Cc:** Shawn Shearer; tumbach@starneslaw.com; david@zeitlinlawfirm.com
**Subject:** Re: Obligation to Meet and Confer - IN RE: Barger v. First Data

Mr. Eidelman,

I will be happy to continue to uphold my end of our mutual obligation to meet and confer as soon as you remove the motion currently filed in Alabama. Case No. 2:18-mc-01569-AKK. Once you formally withdraw that motion and notify me that this has been done through legal proof of service I will provide you with dates on which I may be available for deposition. Please do not misconstrue this email as any form of agreement to provide documents or specify testimony. On September 19th all matters pertaining to the subpoenas you sent to my home were rendered moot by Chief Judge Bowdre in the Northern District of Alabama. As a result of that ruling, I have not formally objected to any matters pertaining to those moot subpoenas. If necessary I will be asking for an extension of time to object to matters surrounding the now moot subpoenas you sent to my house and anticipate that my request will be granted. Please let me know when your motion has been withdrawn in Alabama so that we can begin to do this the right way.

Grant Barger

On Tue, Sep 25, 2018 at 1:04 PM Eidelman, Gary B. <Gary.Eidelman@saul.com> wrote:

Mr. Barger:

I would be happy to confer with you about dates when you are available to be deposed in Birmingham. If you can provide me with a list of those dates, we can then schedule a call to discuss. Please advise. Thank you.

Gary B. Eidelman
Sent from my iPhone

On Sep 25, 2018, at 12:52 PM, Grant Barger <barger.grant@gmail.com<mailto:barger.grant@gmail.com>> wrote:

**EXTERNAL EMAIL** - This message originates from outside our Firm. Please consider carefully before responding or clicking links/attachments.


Mr. Eidelman,

I understand that you and I were supposed to "meet and confer" and certify that we did so to the Court. I have attempted to meet this obligation with you more than once. Why do you refuse to meet and confer with me when you know I am representing myself? I am treating you with the respect you deserve and yet you are refusing to extend me the same courtesy. I am asking you once again what you want. I am a very direct person. This subterfuge and amped up drama is all unnecessary. Why did you tell the Court in New York that you need more time because of Joe and then not ask me anything about Joe? You are aware that there is a case filed in Alabama on this matter. It is unfortunate for all parties involved that you do not respect me or this process. If you want to meet your end of our obligation to meet and confer, contact me today.


Grant Barger

<Civil Cover Sheet.pdf>
<Gmail - Alabama Protective Order.pdf>

"Saul Ewing Arnstein & Lehr LLP (saul.com) " made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~~~~+

This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.

+~~~~~~~~~~~~~~~~~~~~~~~~~~+

─Attachments:──────────────────────────────────────────────────────────────

| image001.jpg | 0 bytes |
|---|---|
| image002.jpg | 0 bytes |
| image002.jpg | 0 bytes |