**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| STEVEN B. BARGER, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. EDNY 1:17-cv-04869-FB-LB** |
| | ) | |
| **v.** | ) | **Case No. 2:18-MC-01569-KOB** |
| | ) | |
| FIRST DATA CORPORATION, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

In the movie *Groundhog Day*, weatherman Phil Connors finds himself stuck in a time

loop in Punxsutawney, Pennsylvania. Each day, he wakes up to the same song, reports on the

same news story, and relives the same 24 hours. Likewise, each day since Defendants filed their

motion to compel Grant Barger's deposition, this court feels as if it has relived the same 24 hours

as Mr. Barger[1] continues to file motions and notices repeating the same arguments. Today, the

court ends that time loop.

The late Judge Acker said it best: "Before the court are oceans of motions, motions to

compel, motions to quash, and motions for protection." *E.A. Renfroe & Co. v. Rigsby*, No. 06-

AR-1752-S, 2008 WL 11376585, at *1 (N.D. Ala. June 24, 2008). This matter comes before the

court on "Defendants' Motion to Compel Third Parties Phillip Morgan, Grant Barger and Barger

Consulting Group to Comply with Deposition Subpoena and Memorandum in Support of Law

Thereof." (Doc. 1). The underlying case, *Barger v. First Data Corp.* (1:17-CV-04869-FB-LB), is

pending in the U.S. District Court for the Eastern District of New York. Defendants First Data

---

[1] The court will only use "Mr. Barger" to refer to Grant Barger, not Steven Barger, throughout
this Order.

Corporation, Frank Bisignano, Dan Charron, Anthony Marino, Karen Whalen, and Rhonda Johnson served third-party subpoenas on Phillip Morgan, Grant Barger, and Barger Consulting Group, seeking both depositions and documents. Phillip Morgan, Grant Barger, and Barger Consulting Group all reside in Alabama. Defendants filed their motion to compel in this court on September 24, 2018. (Doc. 1).

On September 26, Mr. Barger, acting pro se, filed his "Motion to Strike, Deny or Consolidate" in response. (Doc. 2). On October 5, Mr. Barger filed his "Response to Motion to Compel & Motion to Quash & for Protective Order." (Doc. 5). On October 15, Defendants filed "Movants' Reply to Opposition to Motion to Compel and Opposition to Motion to Quash and for Protective Order." (Doc. 9). Mr. Morgan never responded to Defendants' motion. The motion to compel is now ripe for review.

## I. Background

This case originated as a wrongful termination action in the U.S. District Court for the Eastern District of New York. Plaintiff Steven Barger, a business consultant, filed a complaint against his former employer, First Data Corporation, and several executives. Plaintiff Steven Barger alleges that Defendants wrongfully terminated him in violation of the Family Medical Leave Act and the Americans with Disabilities Act, failed to reasonably accommodate his disability, discriminated against him based on disability, and retaliated against him. *See* (Docs. 1 & 34 in 1:17-cv-04869-FB-LB).

Defendants seek testimony and document production from Phillip Morgan, Grant Barger, and Grant Barger's consulting business. Mr. Morgan is Plaintiff Steven Barger's accountant, and Mr. Barger is Plaintiff Steven Barger's son. (Doc. 1 at 2). In his deposition, Plaintiff Steven Barger claimed that prior to working at First Data in 2014, he had a "lucrative consulting"

business working for his son's consulting business. (*Id.*). But Plaintiff Steven Barger's tax returns from 2012 and 2013 indicate a significantly lower income than he claimed in the deposition. Plaintiff Steven Barger claimed that the money that he earned as a consultant at his son's business, but did not report on his taxes, was "left in Mr. Barger's company."

Plaintiff Steven Barger first began working for First Data as an independent consultant, and then later became an employee of First Data. While Plaintiff Steven Barger was an independent consultant with First Data, his son's business, Barger Consulting Group, sent invoices to First Data for his services. During the three and a half months he worked for First Data as an independent consultant, Plaintiff Steven Barger stated that he charged First Data a monthly fee of $30,000. First Data explained that, given Plaintiff Steven Barger's monthly fee, Barger Consulting Group should have billed the company for $105,000 for Plaintiff Steven Barger's services. Instead, Barger Consulting Group billed First Data for $170,000. When questioned in his deposition about his income and tax return discrepancies, Plaintiff Steven Barger told Defendants to ask his accountant, Mr. Morgan, and his son, Mr. Barger.

Defendants continue to investigate the discrepancies in Plaintiff Steven Barger's tax returns and income to support their after-acquired evidence defense. The U.S. District Court for the Eastern District of New York issued third-party subpoenas to compel testimony and document production by Phillip Morgan and Grant Barger, who work and reside in the Northern District of Alabama, and Barger Consulting Group, Mr. Barger's business. (Doc. 1 at 1). The subpoena for Mr. Morgan seeks various documents and communications with Barger Consulting Group and Plaintiff Steven Barger regarding their tax returns and deductions, in addition to various documents regarding how Barger Consulting Group billed its clients. (Doc. 1-1 at 52–55). The subpoenas seek the same categories of documents from Mr. Barger and Barger

Consulting Group: personnel file and tax documents relating to Plaintiff Steven Barger; documents regarding Barger Group LLC's contracts, invoices, financial statements, retainer fees, billing rates, tax returns, information used in preparation of filing tax return, and profits and losses records, all for the years 2010 through 2017; and communications with Plaintiff Steven Barger, Mr. Morgan, and Shawn Shearer and his law firm concerning the underlying case. (Doc. 1-1 at 66–67, 73–74).

Those subpoenas were served on Mr. Morgan on August 28, 2018, and on Mr. Barger, individually and on behalf of Barger Consulting Group, on September 8, 2018. (Doc. 1-1 at 57, 78). Defendants scheduled both Mr. Morgan's and Mr. Barger's depositions on September 17, 2018, in Birmingham, Alabama.

Defense counsel followed up the subpoenas with emails to Mr. Morgan and Mr. Barger to discuss the subpoenas and document requests. Defense counsel exchanged several emails with Mr. Morgan and Mr. Barger, but neither third party consented to being deposed.

Mr. Barger then filed a motion to quash the subpoena on September 13, 2018, in a different action before this court. *See* (Doc. 1 in No. 2:18-mc-01491-KOB). This court denied the motion to quash. *See* (Doc. 4 in No. 2:18-mc-01491-KOB). Mr. Barger subsequently supplemented the motion to quash, indicating to the court that defense counsel canceled the deposition at issue. *See* (Doc. 6 in No. 2:18-mc-01491-KOB). On September 19, 2018, the court vacated its earlier Order and found the motion to quash as moot, closing the case, because the deposition was seemingly canceled. *See* (Doc. 7 in No. 2:18-mc-01491-KOB).

Defendants then filed the motion to compel at issue in this case on September 24, 2018. (Doc. 1). Defendants seek to compel third parties Mr. Morgan, Mr. Barger, and Barger Consulting Group to comply with the deposition subpoenas duces tecum. On September 26,

2018, Mr. Barger filed his "Motion to Strike, Deny or Consolidate." (Doc. 2). He subsequently filed his "Response to Motion to Compel & Motions to Quash & for Protective Orders" on October 5. (Doc. 5). Defendants filed "Movants' Reply to Opposition to Motion to Compel and Opposition to Motion to Quash and for Protective Order" on October 15. (Doc. 9).

At this point, the filings spun out of control. On October 18, Defendants filed "Supplement to Movants' Reply to Opposition to Motion to Compel and Opposition to Motion to Quash and for Protective Order" in response to allegations by Mr. Barger via email that Defendants had not fulfilled their duty to meet and confer. (Doc. 10).

Mr. Barger then filed his "Reply to Opposition to Motions to Quash & for Protective Orders" on October 19. (Doc. 11). Among other things, Mr. Barger notified Defendants that Barger Consulting Group, the company they had subpoenaed, was not the name of his company. In an attempt to fix the naming mistake, Defendants filed their "Notice of Correction" on October 19. (Doc. 12).

Mr. Barger then filed two motions for Rule 11 sanctions against Defendants and defense counsel. (Docs. 13 & 14). On October 24, Defendants filed "Defendants' Opposition to Grant Barger's (1) Motion for Sanctions (ECF No. 13) and (2) Objection to Notice of Correction and Motions for Sanctions (ECF No. 14)." (Doc. 15). Barger concluded by filing his "Reply in Support of Grant Barger's Motion for Rule 11 Sanctions (Docket No. 13) and Objection to Notice of Correction and Motions for Sanctions (Docket No. 14)" on October 29. (Doc. 16).

## II. Discussion

Defendants seek the deposition of Mr. Morgan and Mr. Barger in addition to documents produced by Mr. Morgan, Mr. Barger, and Barger Consulting Group. The court will address the motion in reference to each third party in turn.

### A. Mr. Morgan

Defendants seek the testimony of Phillip Morgan in support of its after-acquired evidence defense to Plaintiff Steven Barger's wrongful termination claims. Rule 45 of the Federal Rules of Civil Procedure provides several instances in which the court may quash a subpoena. But all of those instances require a timely motion by the person or entity subject to the subpoena. *See* Fed. R. Civ. P. 45(d)(3). Mr. Morgan has not filed any response in this action.

Mr. Barger has included Mr. Morgan in several of his responses and motions. But because Mr. Barger is pro se and not an attorney, Mr. Barger cannot represent Mr. Morgan. Mr. Barger clarifies in his second responsive filing that he seeks to prevent Mr. Morgan from "be[ing] required [to] testify or turnover [sic] documents about me and my business and my documents for the same reasons I argued in my Motion to Quash." (Doc. 5 at 2 n.1).

"When a subpoena is directed to a nonparty, any motion to quash . . . generally must be brought by the nonparty." *E.A. Renfroe & Co.*, 2008 WL 11376585, at *3–4 (quoting 9 *Moore's Federal Practice* § 45.50[3] (3d ed. 2008)). The court recognizes that parties may have standing to challenge a non-party subpoena based on the party's personal right or privilege over the information subpoenaed. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (holding that defendants lacked standing to challenge a non-party subpoena when they were not in possession of the materials and did not allege a personal right or privilege); *Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D. Mo. 1957) ("Unless a party to an action can make claim to some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a non-party witness, the party to the action has no right to relief . . . ."); *see also Auto-Owners Ins. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (finding that defendants failed to show an expectation of privacy in their business transactions, and therefore could not

establish a personal right as to those records). At least one court has held that non-parties also may have standing when challenging subpoenas against other non-parties to obtain information to which the challenging non-party has a personal right or claim of privilege. *See Estate of Ungar v. Palestinian Authority*, 332 F. App'x 643, 645 (2d Cir. 2009) (holding that a non-party had standing to challenge a subpoena over records maintained by its law firm, a different non-party).

Mr. Barger simply requests that "[Mr.] Morgan not be required [to] testify or turnover [sic] document[s] about me and my business and my documents for the same reasons I argued in my Motion to Quash." (Doc. 5 at 2 n.1). But nowhere does Mr. Barger allege that he has a personal right or claim of privilege over any of these documents. Without any evidence proving that he has such a right or privilege, the court cannot find that he has standing to challenge Mr. Morgan's subpoena.

Because Mr. Morgan has not responded to the motion to compel or offered any argument why he should not be required to comply with the subpoena, the court will GRANT the motion to compel with respect to Mr. Morgan.

### B. Mr. Barger

Mr. Barger offers several reasons why the court should quash the subpoena seeking his deposition and production of documents. He contends that (1) Defendants lied to this court and the U.S. District Court for the Eastern District of New York; (2) no outstanding subpoena exists; (3) Defendants failed to meet and confer with him prior to filing their motions compelling his compliance with the subpoena; (4) the subpoena requests privileged information; (5) the information sought is duplicative; (6) Defendants are solely requesting certain documents to build a case against Mr. Barger, not for use in the underlying matter; (7) the information

requested contains trade secrets; (8) he does not possess some of the documents requested; and (9) the subpoenas are overbroad and irrelevant. This court will discuss each argument raised.

Under Rule 45(d)(3) of the Federal Rules of Civil Procedure, the court must quash or modify a subpoena on timely motion if the subpoena (1) "fails to allow a reasonable time to comply," (2) "requires a person to comply beyond the geographical limits specified in Rule 45(c)," (3) "requires disclosure of privileged or other protected matter," or (4) "subjects a person to undue burden." The court may quash or modify the subpoena on timely motion if the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B).

To begin, Mr. Barger notes that "I did not have an opportunity to object to the subpoenas because they were determined to be moot. If I had the opportunity to do so, I would say the following . . . ." (Doc. 5 at 15). As the court will later explain, the court never found the *subpoenas* to be moot. The court only found that the m*otion to quash the subpoena* was moot. The subpoenas are not moot.

So, Mr. Barger's objections would have been untimely under Rule 45. Under Rule 45, an objection must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). Because he filed his objections on October 5, 2018, twenty-seven days after the subpoena was served, Mr. Barger's objections were untimely. Because Mr. Barger is pro se and clearly was confused regarding the status of the subpoenas after the court found as moot his initial motion to quash, the court will assume *arguendo* that he timely raised his objections.

### i.     Lies to the court

Mr. Barger argues that Defendants lied to Judge Bloom of the Eastern District of New York by suggesting that Plaintiff Steven Barger's representations to Joe Plumeri about his monthly income are the only reason why Defendants seek Mr. Barger's deposition. Mr. Barger alleges that the lies continued in the motion to compel in which Defendants misstated the length of time Plaintiff Steven Barger consulted with First Data and omitted any mention of Mr. Barger's attempts to speak with defense counsel prior to the deposition.

Lying to the court is not a ground upon which the court may or must quash a subpoena. *See* Fed. R. Civ. P. 45(d)(3). In addition, the court is unconvinced that Defendants lied to the court. Mr. Barger contends that he knows nothing about Plaintiff Steven Barger's relationship with Joe Plumeri, and so Defendants' reason for seeking Mr. Barger's deposition must be pretextual. But after denying that he has knowledge of Plaintiff Steven Barger and Mr. Plumeri's relationship, Mr. Barger provides the court with several details about the relationship, like that their friendship goes back three decades. Even if Mr. Barger were to lack any knowledge of the relationship, he may simply state such in his deposition.

Mr. Barger complains that Defendants request 16 categories of information regarding this relationship and Plaintiff Steven Barger's activities as a consultant. But Mr. Barger fails to address—and this court cannot see—how Defendants lied and how any such lying would affect the validity of this facially fair and relevant subpoena.

Mr. Barger alleges that Defendants omitted mentioning Mr. Barger's attempts to speak with defense counsel. This court recognizes that Mr. Barger has repeatedly reached out to defense counsel about the information they sought from him. The court fails to see why Mr. Barger is so resistant to this subpoena when he was so eager to respond to defense counsel in

August 2018 when he emailed defense counsel offering to speak with them prior to even being served a subpoena.

Mr. Barger has not provided evidence that Defendants lied to the court; regardless, lying to the court is not a reason to quash a subpoena under Rule 45(d). So this argument fails.

### ii.    No subpoena exists

Mr. Barger next argues that no outstanding subpoena exists for his deposition or production of documents. He bases this assertion on this court's September 19, 2018 Order in a related matter, Case No. 2:18-mc-01491-KOB, that mooted his prior motion to quash. In that related matter, Mr. Barger had filed a "Motion to Quash and Motion for Protective Order" regarding the same subpoena at issue in this matter. *See* (Doc. 1 in 2:19-mc-01491-KOB). His argument rested primarily on being unavailable on September 17, 2018, the date defense counsel scheduled his deposition. Mr. Barger later represented to the court that defense counsel had canceled the scheduled deposition at issue. Because Mr. Barger's argument had been resolved— he was no longer required to sit for a deposition on September 17—the court found Mr. Barger's motion to quash as moot. *See* (Doc. 7 in 2:18-mc-01491-KOB).

The court never found the subpoena moot. The subpoenas in this case remain ripe, and so this argument fails.

### iii.    Failure to meet and confer

Mr. Barger also contends that defense counsel never met and conferred with him prior to filing their motion to compel. Defendants submitted their "Supplement to Movants' Reply to Opposition to Motion to Compel and Opposition to Motion to Quash and for Protective Order" to address this argument. (Doc. 10). But the court need not reach Defendants' supplement to find proof that Defendants did indeed attempt to meet and confer.

Under Rule 37, a motion for an order compelling disclosure or discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Mr. Barger misunderstands the meaning of Rule 37. The rule requires the parties to "confer[] or *attempt*[] to confer," not necessarily a successful remediation of the dispute before turning to the court. *Id.* (emphasis added).

Defendants' original motion, the motion to compel, does include exhibits demonstrating Defendants' attempts to meet and confer with Mr. Barger. Mr. Barger emailed defense counsel on August 14 to discuss scheduling a time to speak. (Doc. 1-2 at 40–49). After Defendants served the subpoena on Mr. Barger on September 8, (doc. 1-1 at 78), defense counsel emailed Mr. Barger on September 11 to set up a date for his deposition, (doc. 1-2 at 10). Mr. Barger responded that defense counsel should have followed up sooner, as he had emailed defense counsel on August 14 to discuss the deposition. Mr. Barger did not respond to defense counsel's inquiry about scheduling, but berated defense counsel for "the cloak and dagger drama of demanding a bunch of papers that I never agreed to give." (*Id.*). Defense counsel followed up with another letter asking Mr. Barger if he was available for a deposition on September 17. (*Id.* at 13). Rather than respond to the letter, Mr. Barger filed a motion to quash in this court. *See* (Doc. 1 in 2:19-mc-01491-KOB).

The record shows plenty of attempts to meet and confer between Defendants and Mr. Barger. Rule 37 does not require the parties to *successfully* meet and confer, nor does it require such a conference to be in person. The email and letter chains back and forth represent attempts between defense counsel to schedule Mr. Barger's deposition and Mr. Barger's concerns regarding the deposition. For example, when Mr. Barger emailed defense counsel that he did not

know why he was being subpoenaed, defense counsel explained why his testimony was relevant to the case and why the deposition must be scheduled quickly. (Doc. 1-2 at 10).

While defense counsel and Mr. Barger were woefully unsuccessful at mediating their own disputes, the court recognizes that Defendants did attempt to confer with Mr. Barger prior to reaching out to the court. Therefore, because Defendants did attempt to meet and confer before filing the motion to compel, this argument fails.

### iv. Privileged information

Mr. Barger argues that the subpoena requests information about his confidential communications with employees of the Law Office of Shawn Shearer. Item 18 of Mr. Barger's subpoena requests "[a]ll communications and ESI that you have had with Shawn Shearer, Brenda Barger, or the Law Offices of Shawn Shearer since August 10, 2018 concerning *Barger v. First Data Corporation et al*." (Doc. 1-1 at 67). According to Mr. Barger, the law firm "has provided [him] corporate and legal advice about [his] business." (Doc. 5 at 12). Defendants also note that Shawn Shearer is Mr. Barger's brother-in-law. (Doc. 1 at 2).

The attorney-client privilege protects confidential communications made between the lawyer, in his professional capacity, and the client for the purpose of securing legal advice. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991) (citing *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973)) (finding that communications with a lawyer in his capacity as a Deputy Counselor were subject to attorney-client privilege when the defendant approached him for legal advice). The burden of proving that the attorney-client privilege existed rests on the individual invoking that privilege. *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013) (holding that defendant failed to adequately assert attorney-client privilege).

Under Rule 37, the court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver apples." Fed. R. Civ. P. 37(d)(3)(a)(iii). To withhold information because of privilege, a party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). "Filing a privilege log has become the 'universally accepted mean[s] of asserting privileges in discovery in the federal courts.'" *Smith v. Café Asia*, 256 F.R.D. 247, 250 (D.D.C. 2009) (quoting *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 1 (D.D.C. 1999)). Once Mr. Barger produces a privilege log, the court can then determine whether the communications at issue are privileged.

While a court may waive privilege when a party fails to produce a privilege log, waiver is a harsh sanction typically reserved for situations absent excessive delay or bad faith by the proponent. *See Pub. Serv. Co. of NH v. Portland Nat. Gas*, 218 F.R.D. 361, 363 (D.N.H. 2003) ("[U]sing Rule 33(b)(4) to justify a waiver finding when the responding party invokes a privilege but initially fails to produce a privilege log with its discovery responses is unnecessarily harsh."); *see also Smith v. James C. Hormel Sch. of Va. Inst. of Autism*, No. 3:08cv00030, 2010 WL 3702528, at *4–5 (W.D. Va. Sept. 14, 2010) ("Given the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith.").

Because Mr. Barger is pro se, the court recognizes that he is unfamiliar with the Federal Rules of Civil Procedure. Therefore, the court will defer ruling on the motion to compel as to item 18 in the subpoena until Mr. Barger files a privilege log. Mr. Barger shall file a privilege log that describes the documents protected by attorney-client privilege in accordance with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure **on or before January 7, 2019**. Failure to

file a privilege log by the deadline will result in Mr. Barger's waiver of the attorney-client privilege as to the documents requested in item 18, and the court will grant the motion to compel as to item 18.

### v. Duplicative information

Mr. Barger contends that because Defendants obtained the invoices from Mr. Barger's business through other discovery in this case, Mr. Barger does not have to produce the invoices in his possession. He also claims Defendants lack a reason to look at business records of billings to other clients from 2010 through 2017. The latter argument will be discussed later with Mr. Barger's relevance challenge.

Under Rule 45, the court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The court also has a duty to minimize imposing an undue burden on a third party. *Id.* 45(d)(1). But Mr. Barger never alleges that the information requested would be a burden to produce, merely that the information sought has been produced by another party.

Another district court has found an undue burden present when a non-party demonstrated that the information sought was readily accessible elsewhere. *See Breland v. Levada EF Five, LLC*, CA 14-0158-CG-C, 2015 WL 12995098, at *6 (S.D. Ala. Apr. 30, 2015) (finding that documents were readily accessible via another source when the non-party attached the documents from that source to his motion). But a different district court has also found no undue burden when a probability exists that a potentially duplicative search may unearth additional materials relevant to the main issues of the case. *See Williams v. Sunbelt Rentals, Inc.*, No. 8:04-cv-1395-T27MSS, 2005 WL 8160097, at *3 (M.D. Fla. Oct. 12, 2005) (holding that the search

was not a burden when it would only take a few hours and the previous search from another

source turned up numerous missing pages).

Here, Defendants note that Plaintiff Steven Barger was unable to explain discrepancies in

his tax returns and told Defendants that his accountant and son could answer these questions.

Plaintiff Steven Barger also could not explain questions regarding "suspect invoices that he and

G. Barger's company submitted to First Data." (Doc. 9 at 6). In light of the probability of

unearthing new, relevant material and Mr. Barger's failure to allege any time or monetary burden

in producing this discovery, this argument also fails.

### vi.    Improper purpose

Mr. Barger argues that Defendants seek his deposition for an improper purpose. He fears

that "First Data is trying to use the subpoenas to develop a case against me." (Doc. 5 at 14).

Whether the deposition of Mr. Barger and production of the requested documents results in a

case against Mr. Barger is not a question for this court. Defendants subpoenaed Mr. Barger for

his close relationship with his father, Plaintiff Steven Barger, and Plaintiff Steven Barger's work

for Mr. Barger's consulting business, which has resulted in allegedly suspect invoices submitted

to First Data. The court finds that the financial information and communications with Plaintiff

Steven Barger requested is highly relevant to Defendants' case. Therefore, this argument fails.

### vii.    Trade secrets

Mr. Barger alleges that the information sought regarding his clients and billing rate from

2010 to 2017 is a trade secret. He notes that "[t]here could be significant damages to my business

if clients know I am revealing their information." (Doc. 5 at 14).

Under Rule 45, the court may quash or modify a subpoena if it requires "disclosing a

trade secret or other confidential research, development, or commercial information." Fed. R.

Civ. P. 45(d)(3)(B)(i). The burden to establish that the information sought is a trade secret and the harm of its disclosure rests on the party seeking to avoid discovery. *See Sams v. GA West Gate, LLC*, 316 F.R.D. 693, 698 (N.D. Ga. 2016) ("The party resisting discovery must first establish that the information sought is a trade secret [or otherwise confidential] and then demonstrate its disclosure might be harmful."). Once the movant meets this burden, "the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated.'" *Id.* (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006)). The court then applies a balancing test:

> [T]his Court must balance [Defendants'] need for discovery against the burden imposed upon [Mr. Barger], along with [his] interest in keeping the requested information confidential. Other factors this Court should consider are the relevance of the requests, the breadth of the request, the time period covered by the requests, and the particularity with which the documents are described. The status of a person as a non-party is a factor that weighs against disclosure.

*Matter of Subpoena Issued to Intercon Res., Inc.*, CV 3:06CV714, 2008 WL 11375414, at *2 (N.D. Ala. Sept. 30, 2008) (quoting *Fadalla v. Life Auto. Products, Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007) (internal citations omitted)).

A mere conclusory statement that information sought *may* contain a trade secret or *could* be harmful is insufficient. *See Sams*, 316 F.R.D. at 698 ("Movant's conclusory statement that the subpoena is too broad and that '*some*' of the responsive documents [*may* be confidential] does not come close to carrying its burden."); *AAL USA, Inc. v. Black Hall Aerospace, Inc.*, No. 2:16-cv-02090-KOB, 2018 WL 2463710, at *2 (N.D. Ala. Feb. 22, 2018) (finding that movant failed to establish information was confidential when it merely recited the subpoena requests). Here, Mr. Barger contends that turning over the identities of his clients and billing rates would harm his business, but provides no further details.

Federal courts have held that customer lists and billing rates may be trade secrets, particularly when the holder of such information takes steps to maintain the confidentiality of that information. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 668 (S.D. Tex. 2010) (finding that billing rates and client lists are confidential when the owner took steps to keep that information secret, even though the information previously was publicly available); *Feldman v. Cmty. Coll. of Allegheny*, 85 F. App'x 821, 827–28 (3d Cir. 2004). *But see Peter Kiewet Sons', Inc. v. Wall St. Equity Grp., Inc.*, No. 8:10CV365, 2011 WL 5075720, at *7 (D. Neb. Oct. 25, 2011) (holding that business documents exchanged with clients cannot be trade secrets when the party seeking to avoid discovery simply claims the information is confidential "without further substantiation," and noting that "even if any of the information or documents sought are indeed confidential, the proper course of action is to enter into a protective agreement . . . not deny the requests altogether"). Mr. Barger has offered no evidence that his client lists are confidentially maintained and not publicly known.

But even assuming that Mr. Barger's customer lists and billing rates are trade secrets, Mr. Barger has failed to establish that disclosure would be harmful. In *Fadalla v. Life Automotive Products, Inc.*, the court found that the party demonstrated disclosure of a client list was harmful when it required the party to breach its non-disclosure and secrecy agreements with its clients. *See* 258 F.R.D. at 506. While the court surmises that situations exist in which client identities and billing rates can be harmful if released, Mr. Barger has offered no evidence or argument that disclosing his business consulting clients or billing rate presents such a risk.

Further, the court finds the "Stipulated Order Regarding Confidentiality of Discovery Material" jointly filed and ordered by Magistrate Judge Bloom in the underlying case is sufficient to protect against the leakage of any potentially confidential information. *See* (Doc. 23

in 1:17-cv-04869-FB-LB). Therefore, because Mr. Barger has failed to establish that the information sought is a trade secret that if disclosed would result in harm, this argument fails.

### viii.    Wrong third party

Mr. Barger contends that because the subpoenas seek information belonging to entities, namely Mr. Barger's consulting limited liability company, he lacks the authority to turn over the documents. Subpoenas duces tecum command a person to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A subpoena cannot require an individual to produce documents over which he lacks possession. *See Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC*, 280 F.R.D. 639, 640 (M.D. Fla. 2012) (holding that a protective order was appropriate when the movant submitted an affidavit that she did not have possession of the documents, which the opposing side did not refute).

Mr. Barger states that, because some of the documents requested are not in his possession but in that of his consulting business, he cannot produce those documents. Specifically, the documents requested under items 1 through 16 of the subpoena to Mr. Barger appear to be business records that likely are not in his individual possession. (Doc. 1-1 at 66–67). Defendants have offered no evidence or argument that these documents actually are within Mr. Barger's possession or control. To the extent the documents requested in items 1 through 16 are in possession of the limited liability company, to which Defendants have also issued a subpoena seeking the same records, the court will DENY Defendants' motion to compel the subpoena as to documents over which Mr. Barger does not have possession.

### ix. Overbreadth and irrelevance

Mr. Barger challenges the subpoena as being overbroad and irrelevant. Mr. Barger brings three specific challenges to relevancy and breadth of the requests. First, he argues that the documents requested involve an eight-year period and are disproportionate to the needs of the case and broader than necessary to determine Plaintiff Steven Barger's monthly income prior to being hired by First Data. Second, he asserts that his contracts, agreements, and billing practices are irrelevant to the case, particularly those contracts before First Data hired Plaintiff Steven Barger and after First Data terminated Plaintiff Steven Barger. Third, Mr. Barger claims that the documentation of Plaintiff Steven Barger's consulting expenses in connection with Mr. Barger's consulting firm between 2010 and 2017 has "nothing to do with Plaintiff Barger's income."

Rule 26 limits discovery to:

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Generally speaking, 'relevance' for discovery purposes is broadly construed." *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).

In the underlying district court case in New York, Plaintiff Steven Barger alleges that Defendants wrongfully terminated him in violation of the Family Medical Leave Act and Americans with Disabilities Act, and he seeks millions of dollars in damages. *See* (Doc. 34 in 1:17-cv-04869-FB-LB; Doc. 9 at 9 in 2:18-mc-01569-KOB). Defendants argue that the information sought "goes directly to Defendants' defenses to [Plaintiff Steven Barger's] claims for damages under an after-acquired evidence defense." (Doc. 9 at 9).

After-acquired evidence of an employee's wrongdoing may mitigate damages owed for wrongful termination by the defendant. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995) ("[W]e must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered.").

So, Defendants here seek to obtain information regarding Plaintiff Steven Barger's activities when he worked as a consultant for Mr. Barger's consulting firm. The information sought—including Barger Consulting Group's tax returns, contracts with clients, invoices sent to clients, and process of determining consulting fees, in addition to Plaintiff Steven Barger's expenses while he was consulting between 2010 and 2017—are highly relevant to Defendants' defense. Information regarding an employee's wrongdoing is relevant "not to punish the employee, or out of concern 'for the relative moral worth of the parties,' but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *McKennon*, 513 U.S. at 361 (quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968)).

Federal courts are wary of allowing "fishing-expedition discovery" by employers to find evidence of wrongdoing. *Premer v. Corestaff Servs, L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005). Instead, they "must have some preexisting basis to believe that after-acquired evidence exists before it can take on additional discovery." *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-CV-1056-J-32MCR, 2006 WL 1627020, at *5 (M.D. Fla. June 6, 2006). But Defendants here are not on a fishing expedition. Plaintiff Steven Barger in his deposition gave rise to inferences of misconduct, and directed Defendants where to uncover more information.

The court disagrees with Mr. Barger's insistence that this information "has absolutely nothing to do with Plaintiff Barger's employment by First Data . . . and his claim that First Data

violated the FMLA and ADA when they terminated him." (Doc. 5 at 16). Plaintiff Steven Barger represented that he left a "lucrative consulting" business to work for First Data, but he only received $16,210 in 2013 from that business. (Doc. 1-1 at 22). If Plaintiff Steven Barger misrepresented his success, and therefore his experience and qualifications, to First Data and First Data relied upon those misrepresentations, Plaintiff Steven Barger may have committed a wrongdoing that would mitigate First Data's damages.

In his deposition, Plaintiff Steven Barger indicated that he earned more than the income reported on his tax returns, but that the money "all went to the Barger Group, everything got paid to the Barger Group." (Doc. 1-1 at 23). So, if Plaintiff Steven Barger in fact had a lucrative consulting practice, the business's financial records—including its tax returns, financial statements, and invoices sent to clients—should reflect that success, and would explain away the discrepancy between Plaintiff Steven Barger's comments about his income.

But Plaintiff Steven Barger also failed to answer several important questions regarding his tax reports. For example, he was unable to explain why he included business expenses on his personal tax return to offset his income from the consulting practice. (Doc. 1-1 at 24–25). Specifically, he could not explain why the rent for his home office jumped from $1,500 to $22,900 for six months or why his income decreased from $77,000 in 2011 to under $20,000 in 2012 and 2013, "other than the fact that [Plaintiff Steven Barger] started working . . . at the Barger Group." (*Id.* at 27). Because of the discrepancies in the tax reporting relating Plaintiff Steven Barger to the Barger Consulting Group, analyzing the Barger Consulting Group's broader financial records—including billing rates and contracts with clients to determine the actual income generated—may give a more accurate picture of the financial status of the company, and thus whether Plaintiff Steven Barger actually had a lucrative consulting business.

Therefore, because the information sought seems highly relevant to Defendants' after-acquired evidence defense, this argument, too, fails.

Accordingly, the court will GRANT IN PART and DENY IN PART Defendants' motion to compel. (Doc. 1). The court will GRANT the motion as to the information requested in items 1 through 16 to the extent Mr. Barger possesses that information, and will GRANT the motion as to the information in items 17 and 19. The court will DENY the motion as to the information requested in items 1 through 16 to the extent Mr. Barger lacks possession over that information. The court will DEFER ruling on the motion to compel as to item 18 until it can determine whether the information sought is privileged.

## C. Barger Consulting Group

In his "Reply to Opposition to Motions to Quash & for Protective Order," Mr. Barger points out that Barger Consulting Group is not a real Alabama company. (Doc. 11). Mr. Barger owns The Barger Group LLC. (Doc. 14 at 4). After Mr. Barger notified Defendants of their naming mistake in his motion, Defendants promptly filed a Notice of Correction to amend the company name from Barger Consulting Group to The Barger Group LLC in each of its prior filings. (Doc. 12).

Based on the information Defendants have sought since the beginning of this motion to compel, the court is certain that Defendants intended to serve a subpoena on The Barger Group LLC, not the similarly named nonexistent Barger Consulting Group. In their motion to compel, Defendants explained that they sought to depose Grant Barger's company for which Plaintiff Steven Barger worked. (Doc. 1 at 2).

But, because Defendants have not served a subpoena on The Barger Group LLC, the court cannot enforce the motion to compel against it. Therefore, the court must DENY the motion to compel as to Barger Consulting Group.

### D. Motions for Rule 11 Sanctions

Mr. Barger also moved this court for Rule 11 sanctions against Defendants and defense counsel. Rule 11 allows the court to sanction an attorney, law firm, or party that presented to the court (1) information for an improper purpose, such as harassment or delay; (2) a claim, defense, or legal contention not supported by existing law or that was frivolous; (3) a factual contention without evidentiary support; or (4) a denial of factual contention without evidentiary support (or not specifically identified as being based on belief or lack of information). *See* Fed. R. Civ. P. 13(b)–(c).

"The goal of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc)). The court determines whether Rule 11 sanctions are appropriate by considering "reasonableness under the circumstances." *Donaldson*, 819 F.2d at 1556.

While the court is impressed by defense counsel and Mr. Barger's inability to cooperate on any matter, regardless of how small, the court sees no frivolous, meritless, or bad faith claim, defense, motion, or filing on behalf of Defendants. Therefore, the court will DENY both of Mr. Barger's motions for Rule 11 sanctions. (Docs. 13 & 14).

### III. Conclusion

For the reasons stated above, the court will GRANT IN PART and DENY IN PART Defendants' motion to compel. (Doc. 1). The court will GRANT in full the motion against Mr.

Morgan and DENY in full the motion against Barger Consulting Group. As to Mr. Barger, the court will GRANT the motion as to the information requested in items 1 through 16 to the extent Mr. Barger possesses that information, and will GRANT the motion as to the information in items 17 and 19 and as to the deposition. Mr. Barger shall appear for his deposition to be scheduled by defense counsel, while allowing Mr. Barger reasonable time to comply subject to Rule 45(d)(3)(A)(ii). The court will DENY the motion as to the information requested in items 1 through 16 to the extent Mr. Barger lacks possession over that information.

The court will DEFER ruling on the motion to compel regarding Mr. Barger's claim of privilege as to the documents requested in item 18. Mr. Barger shall file a privilege log detailing which communications requested are protected by the attorney-client privilege **on or before January 7, 2019**. Failure to do so will result in waiver of Mr. Barger's privilege, and the court will grant the motion to compel as to item 18.

The court will DENY Mr. Barger's motions for Rule 11 sanctions. (Docs. 13 & 14).

The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 14th day of December, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE